IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **PHONETERNET, LLC d/b/a** | § | |
| **MAESTRO,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:18-CV-1719-L** |
| | § | |
| **LEXISNEXIS RISK SOLUTIONS, INC.** | § | |
| **and RELX, INC.,** | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendants' Joint Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 27); and RELX Inc.'s Motion to Dismiss Third Amended Complaint (Doc. 26). Both motions were filed January 28, 2019. After considering the motions, briefs, pleadings, and applicable law, the court **grants** Defendants' Joint Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 27); **grants** RELX Inc.'s Motion to Dismiss Third Amended Complaint (Doc. 26); and **dismisses with prejudice** all claims and requests for relief asserted and requested by Plaintiff against Defendants in this action.

## I. Factual and Procedural Background

Plaintiff Phoneternet, LLC d/b/a Maestro ("Plaintiff" or "Phoneternet") originally brought this action against Defendant LexisNexis Risk Solutions, Inc. ("LexisNexis") on June 5, 2018. After the case was removed to federal court, Plaintiff amended its pleadings to add RELX Inc. ("RELX") as a defendant. The court refers to LexisNexis and RELX collectively as "Defendants."

In its Third Amended Complaint ("Complaint") (Doc. 25), Plaintiff alleges that, in early 2017, "the Lexus Division of the Toyota Motor Corporation (hereinafter, Toyota) approached [it]

to provide [its] personal assistant service, 'MyStar' to its Lexus Division under the 'Lexus' brand";

that "Toyota and Phoneternet immediately entered into extensive negotiations, demos, and marketing

creation to finalize the deal"; and that consummation of the deal was contingent on Phoneternet

having a "clean business report" as determined by Toyota's procurement department. Pl.'s Compl.

2-3. Plaintiff further alleges that Toyota obtained a business report from Experian Business Credit

Services ("Experian"), as well as LexisNexis, and was unhappy with what both reports revealed

about Phoneternet's business credit rating and informed Plaintiff:

> At this point since all we have to go on is Experian and LexisNexis information and as I pointed out yesterday we need to protect our brand at all costs. Once you have worked out any potential changes please reach back out to me and we can then have risk management re-evaluate at that point.

*Id.* at 4.

Plaintiff alleges that, after it notified Experian by letter on July 20, 2017, regarding

discrepancies in the Experian business credit advantage report obtained by Toyota, Experian updated

Phoneternet's credit report on August 23, 2017, which raised Phoneternet's business credit score.

Plaintiff alleges that, on July 21, 2017, it similarly notified LexisNexis regarding 15 discrepancies

and errors in the LexisNexis database related to Phoneternet, provided supporting documentation,

and requested LexisNexis to correct the incorrect information, but LexisNexis did not respond until

October 6, 2017.

According to Plaintiff, LexisNexis stated in a letter on this date that it had "modified 'the

data as requested,' when in fact LexisNexis only changed one of the fifteen discrepancies" identified

by Phoneternet. *Id.* at 6. Plaintiff alleges that it subsequently:

> began to contact LexisNexis at least three times a week at its phone number of 1-800-382-6228 which is for the LexisNexis Small Business Advocacy Center (SBAC). Plaintiff spoke with the LexisNexis customer service team, managers and

supervisors on numerous occasions who each assured Plaintiff that Plaintiff's information would be updated in the database. Plaintiff was informed more than once that the issue of Phoneternet's data had been passed upon by senior decision makers at LexisNexis and would be fixed promptly. But the promised action never materialized.

*Id.*

Plaintiff alleges that, on November 16, 2017, it was informed that Toyota had decided to not use Phoneternet because of the issues with its business report. Plaintiff further alleges that it sent LexisNexis a final letter on January 2, 2018, to again request that LexisNexis correct the incorrect information in its database regarding Phoneternet; that LexisNexis notifed Plaintiff, on February 12, 2018, that it had made one additional change to Phoneternet's business report but failed to explain why the other requested changes had not been made; and that, to date, LexisNexis has failed to correct these errors in its database. Plaintiff alleges that, as a result of these errors and the failure to correct errors brought to its attention, it lost the contract with Toyota, and its future business prospects with other business partners will be negatively effected if the errors are not corrected.

Plaintiff alleges various Texas tort claims against Defendants for negligence; business disparagement; negligent misrepresentation; tortious interference with prospective business relations; and negligent breach of special duty. Plaintiff also asserts a claim for equitable relief based on promissory estoppel and seeks injunctive relief. Plaintiff alleges that RELX, as the parent company of LexisNexis, is jointly reliable for LexisNexis's conduct based on alter ego and joint enterprise theories of liability. On January 28, 2019, Defendants moved, pursuant to Federal Rule of Civil Procedure 12(b)6), to dismiss all claims asserted against them.

## II.      Rule 12(b)(6) Standard

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*  (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  In ruling on such a motion, the court cannot look beyond the pleadings.  *Id.*; *Spivey v. Robertson*, 197

F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion,

its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

## III. Analysis

### A. RELX's Motion to Dismiss

RELX moves to dismiss all claims against it, contending that, as a matter of law, it cannot be held liable for LexisNexis's alleged conduct under the alter ego or joint enterprise theories alleged by Plaintiff. RELX contends that, under the Texas Business Organizations Code, "a defendant who owns a corporation is not liable for 'any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that . . . [the defendant] . . . is or was the alter ego of the corporation." RELX Mot. 3-4 (quoting Tex. Bus. Orgs. Code Ann. § 21.223(a)(2)). RELX asserts that, "if an obligation falls within the purview of Section 21.223(a), then the statute is the only mechanism for imputing liability onto a corporation's owner, and all other theories are preempted" because section 21.224 provides that section 21.223 "is exclusive and preempts any other liability imposed for that obligation under common law or otherwise." RELX Mot. 3.

RELX, therefore, argues that Plaintiff's claims against it, that are based on alter ego and joint enterprise theories, are barred by statute. In addition, RELX contends that the "joint enterprise" theory of liability "has been rejected by the Texas Supreme Court and the Texas Legislature." *Id.* at 5 (citing *SSP Partners v. Gladstrong Inv. Corp.*, 275 S.W.3d 444, 456 (Tex. 2008), for the

proposition that "'[t]he single business enterprise liability theory is fundamentally inconsistent with the approach taken by the Legislature in Section 21.223."). RELX also contends that Plaintiff's allegations are insufficient to bring its claims within the statutory exception of actual fraud, which requires a plaintiff to plead that "the defendant used the corporation for the purpose of perpetrating, and did perpetrate, an actual fraud on the plaintiff primarily for the defendant's direct personal benefit." RELX Mot. 4 (citing Tex. Bus. Orgs. Code Ann. § 21.223(b); *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1035 (5th Cir. 2010); and *Saeed v. Bennett-Fouch Assoc., LLC*, No. 3:11-CV-1134-F, 2012 WL 13026741, at *4 (N.D. Tex. Aug. 28, 2012)).

Phoneternet concedes in response to RELX's Motion to Dismiss that its claims, to the extent based on an alter ego theory, are barred by statute and acknowledges that the fraud exception does not apply because it has not pleaded a fraud-based theory of piercing the corporate veil. Phoneternet, nevertheless, maintains that its joint enterprise theory of liability survives because the statute does not expressly bar claims based on this theory, and the Texas Supreme Court in *SSP Partners* concluded that the "single business enterprise liability theory" was inconsistent with the statute, not the joint enterprise theory relied on by it.

RELX disagrees with the latter contention and argues that the statute applies "'whatever label might be given' to a plaintiff's attempt to treat corporate entities as a single entity." RELX Reply 2 (quoting *Southern Union Co. v. City of Edinburg*, 129 S.W.3d 74, 87 (Tex. 2003), for the proposition that "the predecessor to Section 21.224 controls, and is the 'exclusive means for imposing liability on a corporation for the obligations of another corporation in which it holds shares'"). RELX asserts that the court in *Biliouris v. Sundance Resources, Incorporated*, No.

3:07-CV-1591-N, 2010 WL 11515566 (N.D. Tex. Aug. 11, 2010), reached the same result and concluded that it could not "impose joint and several liability based on the joint enterprise theory without a finding of actual fraud, as required by section 21.223(b)."  RELX, thus, contends that the joint enterprise theory of liability under Texas common law is likewise barred by sections 21.223 and 21.224 of the Texas Business Organizations Code, and any claim by Plaintiff against it on this theory or an alter ego theory should be dismissed with prejudice.  The court agrees.

Texas law on this issue is quite clear.  Accordingly, based on the authority in RELX's motion and reply brief, the court determines that Plaintiff's claims against RELX that are premised on alter ego and joint enterprise theories of liability fail as a matter of law, as they are barred by the Texas Business Organizations Code and Texas case law interpreting the statute.  Moreover, as noted, Phoneternet concedes that its alter ego theory is barred by the statute, and it acknowledges that the fraud exception is inapplicable.  Accordingly, the court will grant RELX's Motion to Dismiss and dismiss will prejudice all claims by Phoneternet against RELX.  Thus, in addressing Defendants' Joint Motion to Dismiss, the court will only consider whether, under Rule 12(b)(6), Plaintiff has stated any valid claims against LexisNexis upon which relief can be granted.

### B.     Defendants' Joint Motion to Dismiss

#### 1.     Negligence

The elements of a negligence claim under Texas common law are the existence of a duty; a breach of that duty; and damages proximately caused by that breach.  *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (citations omitted).  The threshold issue in any negligence case is whether the defendant owed a duty to the plaintiff.  *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017) (footnote and citations omitted).  Whether a duty exists is "a question of law for the

court to decide from the facts surrounding the occurrence in question." *Id.* (footnote and citations omitted).

Plaintiff's Complaint includes the following list of acts or omissions that form the bases for its negligence claim:

a. Providing false, misleading, and out-of-date information about Plaintiff to third parties, including Toyota and Plaintiff;

b. Failing to maintain up-to-date and correct data to be sold to third parties, including Toyota and Plaintiff;

c. Selling information and data about Plaintiff without conducting due diligence or making updates and corrections;

d. Failing to promptly respond to Plaintiff's initial and subsequent "fix requests" for correcting errors in the data that rendered its use false and misleading;

e. Intentionally delaying the correction of the false information;

f. Failing to timely correct false data and information;

g. Failing to inform Plaintiff of the status of the corrections to the data;

h. Failing and knowingly refusing to fix or correct errors in the data prove[d] to be incorrect by the Plaintiff;

i. Failing to maintain Plaintiff's public records which [LexisNexis] claims to possess for third parties correctly;

j. Failing to notify Plaintiff of reasons why [LexisNexis] failed to fix its errors;

k. Failing to notify Toyota that it had been informed and knew that the report it furnished to Toyota contained false information;

l. Failing to notify Toyota that it was working to correct inaccuracies in its data about Plaintiff;

m. Failing to establish procedures for the prompt correction of erroneous data when notified; and

n. Failing to establish procedures for accelerating the correction process when notified of a business exigency by a victim of its false reporting.

Pl.'s Compl. 8, ¶ 24. According to the parties' briefs, Plaintiff's negligence claims fall under two general categories: (1) LexisNexis's alleged negligence in publishing allegedly incorrect data regarding Phoneternet to Toyota prior to July 21, 2017; and (2) LexisNexis's alleged failure to correct the allegedly inaccurate data as requested by Phoneternet between July 21, 2017, and January 2, 2018.

### a.  Initial Publication of Data to Toyota Before July 21, 2017

Defendants contend that this negligence claim by Plaintiff is barred by the qualified privilege doctrine, under which certain types of speech, including the issuance of credit reports, is protected. Defs.' Jt. Mot. 3 (citing *Dun & Bradstreet Inc. v. O'Neil*, 456 S.W.2d 896, 898 (Tex. 1970)). Defendants assert that qualified privilege applies in this context:

> so long as the report was furnished to persons that have an interest in the report—as opposed to indiscriminately sending the report to subscribers in general. *O'Neil*, 456 S.W.2d at 898-99 ("If an individual … give[s] false and injurious information to persons interested in the trade and commercial standing of another at the time the information is given, such communications would be privileged; but if he furnish[es] the same information to others not so interested,—to traders and merchants as a class,—the communication would not be privileged."); *see also Duffy v. Leading Edge Prods., Inc*., 44 F.3d 308, 312-13 (5th Cir. 1995).

> Once qualified privilege is found applicable, the burden shifts to the plaintiff to overcome the privilege by pleading and proving "actual malice." *O'Neil*, 456 S.W.2d at 898-99 ("Having found that defendant's conditional privilege exists, we now turn to the question of actual malice, such malice being required to overcome defendant's privilege."); *Duffy*, 44. F.3d at 312-13.

> The Fifth Circuit explained in *Frakes* that, to determine actual malice, the "crux" of the inquiry is "whether the defendant ***subjectively*** has 'significant doubt about the truth of his statements ***at the time they are made***.'" *Frakes*, 579 F.3d at 431 (emphasis added). Thus, the analysis for actual malice focuses on the defendant's subjective state of mind at the time of the publication.

Defs.' Jt. Mot. 4.

Defendants argue that qualified privilege applies in this case to Plaintiff's claims arising from the initial publication of the credit report because Phoneternet alleges that the credit report was provided to Toyota, an entity that was interested in the report for purposes of evaluating a potential contract with Phoneternet. *Id.* (citing Pl.'s Compl. ¶¶ 7, 9, 10). Defendants contend that, because the doctrine of qualified privilege applies, Plaintiff has the burden to overcome the privilege by pleading actual malice, which it has not done. Defendants argue that Plaintiff's pleadings, instead, demonstrate a lack of malice because the credit report was published to Toyota on or before June 12, 2017, but Defendants were not informed of the alleged inaccuracies until more than one month later on July 21, 2017. Defendants, therefore, contend that Plaintiff's entire negligence claim, including Plaintiff's allegations of gross negligence and malice, should be dismissed to the extent based on the initial publication of the Report.

Plaintiff disagrees that the qualified privilege doctrine applies to its entire negligence claim and contends that it does not apply to its allegations set forth in paragraphs 24(a) through (n) of its Complaint. Plaintiff contends that, even if the privilege applies to its negligence claims in paragraphs 24(a) through (c), qualified privilege is an affirmative defense for which Defendants have the burden of pleading and proof, and, for this reason, the "mere pleading of 'malice' will defeat a [Rule] 12(b)(6) motion" based on qualified privilege. Pl.'s Resp. 14. According to Plaintiff, its pleadings, which must be taken as true, are sufficient for purposes of *O'Neil* to "establish malice as to the publications of the reports." *Id.* at 15.

Dismissal under Rule 12(b)(6) may be appropriate based on an affirmative defense if the defense "appear[s] on the face of the complaint." *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) (footnote and citation omitted). Qualified privilege operates as an affirmative defense under which "the defendant bears the burden of proving

privileged publication unless the plaintiff's petition affirmatively demonstrates privilege." *Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014) (citing *Denton Pub. Co. v. Boyd*, 460 S.W.2d 881, 884 (Tex. 1970)). If the privilege is established, the court determines whether the plaintiff's pleadings set forth facts, which if proved, establish that the defendant made the statement at issue with actual malice, that is, "with knowledge that it is false, or with reckless disregard of whether it is true."[1] *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). "Reckless disregard is a subjective standard, focusing on the defendant's state of mind. Mere negligence is not enough." *Id.* (citations omitted). Reckless disregard is shown when "the defendant in fact entertained serious doubts as to the truth of [its] publication or had a high degree of awareness of . . . [the] probable falsity of the published information." *Id.* (citation and quotation marks omitted).

Phoneternet alleges that Toyota was a subscriber in 2017 to the platform used by LexisNexis for reporting data and requested a business credit report regarding Phoneternet from LexisNexis on or about June 12, 2017, for purposes of determining whether to finalize a business deal and contract with Phoneternet. Pl.'s Compl. ¶¶ 9-12. Because Plaintiff acknowledges that the business credit report was provided to Toyota at its request, "as opposed to indiscriminately sending the report to [LexisNexis] subscribers in general," Plaintiff's pleadings are sufficient to establish the existence of the qualified privilege. *O'Neil*, 456 S.W.2d at 898.

The issue, therefore, is whether Plaintiff's pleadings set forth sufficient facts to support a finding that LexisNexis, on June 12, 2017, published the information regarding Phoneternet with actual malice. As there is no indication from Plaintiff's pleadings that LexisNexis had any knowledge of the alleged discrepancies that were later brought to its attention *after* it published the

---

[1] Both parties agree that this definition for actual malice, which applies in the context of defamation and business disparagement claims, applies to Plaintiff's negligence claim.

credit report on June 12, 2017, the court determines that Plaintiff's Complaint does not support the inference that the allegedly incorrect information regarding Phoneternet that was published on June 12, 2017, by LexisNexis, was published with actual malice. Accordingly, this negligence claim by Plaintiff fails as a matter of law, and LexisNexis is entitled to dismissal with prejudice of this negligence claim based on LexisNexis's affirmative defense of qualified privilege.

### b.     Failure to Correct Data After Initial Disclosure

Defendants contend that Plaintiff's negligence claim based on LexisNexis's failure to promptly make all corrections and changes to Phoneternet's data upon request by it also fails as a matter of law because there is no duty under Texas law to correct or promptly correct information upon request after publication. Defendants contend that while such a duty may exist in other contexts, such as in consumer credit reporting, no similar duty applies in a commercial setting such as the one here. Defs.' Jt. Mot. 5 (citing *Bacharach v. Suntrust Mtg., Inc.*, 827 F.3d 432, 435 (5th Cir. 2016), for the proposition that commercial transactions do not fall within the scope of the Fair Credit Reporting Act or "FCRA"). Defendants argue that, "[i]f Plaintiff's negligence claim proceeds as pleaded, it would effectively take duties and obligations from the FCRA and transplant them into the realm of business reporting." Defs.' Jt. Mot. 6.

Plaintiff, in response, contends that Texas courts have recognized such a duty and have upheld negligence claims based on "negligent utilization of databases." Pl.'s Resp. 16. For support, Plaintiff cites *U-Haul International Incorporated v. Waldrip*, 380 S.W.3d 118 (Tex. 2012); and *Weaver v. Celebration Station Properties, Incorporated*, No. A. H-14-2233, 2015 WL 1932030, at *6 (S.D. Tex. Apr. 28, 2015). In addition, Plaintiff cites *Bradley v. Avis Rental Car Systems, Incorporated*, 902 F. Supp. 814 (N.D. Ill. 1995), to show that the court in *Bradley*, after considering factors such as the "likelihood of harm, the magnitude of the burden in guarding against the harm,

and the consequences of placing the burden on the defendant," concluded that the "**defendant owed**

[the] **plaintiff a <u>duty to maintain its records</u> in a manner that would preclude reporting the**

**vehicle in question stolen**[.]" Pl.'s Resp. 17 (quoting *Bradley*, 902 F. Supp. at 819-20) (emphasis

provided by Pl.'s Resp.). Plaintiff asserts that the Texas Supreme Court has adopted a similar test

for determining the existence of a duty, and that "[i]f this [c]ourt applies the same test, the duty must

be imposed" because "[t]he risk that the [Toyota] deal would be scuttled was greatly increased by

the Defendants' failure to fix the data. It was a near certainty. Toyota told Plaintiff that the deal was

hung up on the 'procurement issue.'" Pl.'s Resp. 17 (citing Pl.'s Compl. ¶ 20). In this regard,

Plaintiff further asserts as follows:

> It was highly foreseeable and likely that Plaintiff would be injured by failure to fix
> the data. [LexisNexis] had been warned of the damage [it was] about to do: "Plaintiff
> made it clear to LexisNexis that, if not corrected expeditiously, the negative and false
> information would derail the contract that was to be signed soon with Toyota."
> THIRD AMENDED COMPLAINT, ¶ 16. The social utility of maintaining an error
> ridden database is nil. The burden of guarding against it is light. LexisNexis already
> has a system in place for updating the data. They simply chose not to do it. The
> consequences of placing the burden on LexisNexis to keep their data up-to-date are
> very light. They normally update such records. There is no explanation as to why they
> did not in this case (other than malice). The Texas Supreme Court has recognized
> similar duties relating to data. Application of the Texas Supreme Court's factors
> results in recognition of the duty.

Pl.'s Resp. 18.

Plaintiff acknowledges that the FCRA applies only to consumer credit reporting but contends

that the FCRA "**has no application here—none!**" and maintains that Defendants' "**FCRA**

**argument makes no sense**." *Id.* Plaintiff further asserts that Defendants' motion to dismiss its

negligence claim on this ground should be denied because "there is plenty of room for tort law to

impose duties in the commercial context." *Id.* at 20.

"When a duty has not been recognized in particular circumstances, the question is whether one should be" based on a number of considerations. *Pagayon*, 536 S.W.3d at 504. In *Humble Sand & Gravel, Incorporated v. Gomez*, the Texas Supreme Court explained how the existence of a duty is to be determined:

> The considerations include social, economic, and political questions and their application to the facts at hand. We have weighed the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. Also among the considerations are whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm.

*Pagayon*, 536 S.W.3d at 503-04 (quoting *Humble Sand & Gravel, Inc. v. Gomez* 146 S.W.3d 170, 182 (Tex. 2004)). Some of these factors may turn on resolution of disputed facts, but this is "unusual," as "the factual situation presented must be evaluated in the broader context of similarly situated actors," and the issue is "whether a duty should be imposed in a defined class of cases, not whether the facts of the case at hand show a breach. Another reason is that the material facts are either undisputed or can be viewed in the light required by the procedural posture of the case." *Pagayon v*, 536 S.W.3d at 504 (footnote omitted). "The policy components of the factors—including the nature of the covered risks and general foreseeability—are policy issues for the court to consider as a matter of law" because "[t]he factors determine how the class of cases in which the duty applies is to be defined and how that definition shapes the contours of the duty." *Id.* "Of all these factors, foreseeability of the risk is 'the foremost and dominant consideration.'" *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987).

The *U-Haul International Incorporated v. Waldrip* case cited by Plaintiff does not support its argument that Texas courts have imposed a duty on businesses, in circumstances similar to those in this case, to immediately or promptly modify, upon request, information about a company that is

asserted to be incorrect; nor does it stand for the proposition, as Plaintiff contends, that a business has a duty to maintain information in a database designed by it. In *Waldrip*, the plaintiff sued several U-Haul corporate entities and an independent U-Haul dealer after suffering serious injuries in an accident involving a U-Haul truck. *Waldrip*, 380 S.W.3d at 121. The plaintiff sued based on theories of negligence and gross negligence, "alleging that the accident was the result of a systematic pattern of poor inspection and repair practices, and incompetence." *Id.* With respect to the plaintiff's negligence claim, the issue in *Waldrip* was whether a reasonable jury could find, in light of a computer system designed and maintained by U-Haul International ("UHI") for tracking repairs and maintenance and related records for the entire fleet of U-Haul trucks, that a truck's "multiple brake and transmission problems," as reported by U-Haul customers, was sufficient to place all of the U-Haul defendants on notice of "the danger that the truck presented to renters," and whether the independent U-Haul dealer breached its duty by "not discovering these problems or by continuing to rent [the truck] knowing the risk [of danger] it posed to its customers." *Id*. at 137. Thus, contrary to Plaintiff's assertion, the duty imposed in *Waldrip* to discover problems and act on information regarding U-Haul's own trucks to avoid subjecting customers to a risk of serious bodily harm is quite different from the duty advocated by Phoneternet in this case and the risk of economic harm.

 *Weaver v. Celebration Station Properties, Incorporated,* is also distinguishable. Weaver is another personal injury case that involved "a go-kart accident at an amusement park that caused the plaintiff, Kerri Weaver, to fracture her heel." *Weaver*, 2015 WL 1932030, at *1. "Weaver sued the amusement park's owner, Celebration Station Properties ("Celebration"), on behalf of herself and her minor daughter, seeking damages for negligence." *Id.* The main issue in that case was whether Celebration owed a duty to Weaver as a business invitee to warn or guard against physical danger in the form of other reckless drivers. *Id.* at *2. Weaver also argued, based on information her

counsel found on the internet, that Celebration breached its duty of care to her by failing to maintain a "database and system for tracking 'bad apple' drivers who had previously been reckless and caused collisions or wrecks," but there was no evidence that Celebration was aware of this information, and, "Weaver ha[d] neither alleged nor identified record evidence supporting an inference that the driver who bumped her go-kart and caused her injuries was a 'bad apple' who could have been screened through such a system." *Id.* at *6. The court also concluded there was no evidence to support Weaver's argument that Celebration was on notice of the potential harm facing her because of prior lawsuits against Celebration, as none of the lawsuits involved similar go-kart ride activity. *Id.*

Plaintiff contends that "the only reason the Court [in *Weaver*] dismissed a claim for 'failure to maintain a database' was that the plaintiff had not proven that the driver of the accident vehicle was a 'bad' driver who could have been identified by the database," whereas "there is no problem with causation" in this case because "Toyota indicated in an e-mail to Plaintiff that if the data were to be revised the deal could be revisited." Pl.'s Resp. 16-17 (citing Pl.'s Compl. ¶ 12). Plaintiff, however, overlooks that the court in *Weaver* ultimately concluded that Celebration *owed Weaver no duty* to warn her because the dangers of go-kart driving are open and obvious, and "Weaver's personal experiences with go-karts made those inherent risks even more open and obvious." *Id.* at *5. Further, resolution of the plaintiff's negligence claim in *Weaver* turned on Oklahoma negligence law, not Texas law, and there is no discussion in *Weaver* whether duties imposed under Oklahoma law and Texas law are the same or similar.

Moreover, the defendants in *Waldrip*, *Weaver*, and the Illinois case cited by Phoneternet were tasked with the duty of maintaining *their own records*, not the records of other companies. In this situation, it makes sense to place the burden on the defendants to maintain their own records, particularly when there is a serious likelihood of harm to others for not doing so. Phoneternet, on

the other hand, requests that the court impose a legal duty that would require a company like LexisNexis or Experian that collects credit-related business data regarding other companies to promptly modify the business data compiled by them anytime a company like Phoneternet requests that its business data be modified based on alleged inaccuracies.

In addition, as noted, Plaintiff maintains that companies like LexisNexis should be required to notify third parties like Toyota when it *knows* the credit report furnished included "false information." Pl.'s Compl. 8 ¶ 24(k). In other words, this and many of the other acts or omissions alleged by Plaintiff are based on the allegations that LexisNexis *knew* that the information provided to Toyota regarding Phoneternet was inaccurate or "false" but, nevertheless, refused to make requested corrections promptly. Phoneternet acknowledges in its Complaint, however, that LexisNexis did not make all of the changes requested because it "continued to stand by [its] data," *id.* ¶ 28,[2] which implies that LexisNexis disagreed with Phoneternet and, thus, did not, as Plaintiff alleges, know or even agree that its data for Phoneternet was "false" or incorrect after being notified by Phoneternet of alleged inaccuracies. Plaintiff also fails to provide any facts to support its allegation that the information LexisNexis provided to Toyota was false or inaccurate. While the court must accept as true factual allegations in Phoneternet's pleadings, it may not accept as true conclusory allegations or allegations that are contradicted by other allegations within its own Complaint. *See Rosas v. Bexar Cty.*, No. 5:14-CV-1082-DAE, 2015 WL 1955406, at *5 (W.D. Tex. Apr. 29, 2015)[3]; *Ratliff City of Uvalde*, No. DR-06-CV-029-AML, 2007 WL 9702407, at *2 (W.D.

---

[2] *See also* Pl.'s Compl. ¶ 40 (same).

[3] For support, *Rosas* cites the following cases:

*See Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (holding that facts need not be admitted as true whe[n] an appended document, treated as a part of the complaint, contradicts allegations within the complaint); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013)

Tex. Mar. 29, 2007) (quoting 5A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1357 (2d ed. 1990), as follows: "[T]he court will not accept conclusory allegations concerning the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened, or if these allegations are contradicted by the description itself.").

As Plaintiff cites no authority on point, and the court was unable to find any Texas case factually similar to this case in which a legal duty has been recognized and imposed in the manner advocated by Plaintiff, the court determines that LexisNexis owed no duty under Texas law as urged by Phoneternet to promptly correct alleged inaccuracies in the business data maintained by LexisNexis upon Phoneternet's request. After considering the factors in *Humble Sand & Gravel, Incorporated v. Gomez* as discussed by the Texas Supreme Court in *Pagayon*, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant, the court also declines to impose such duty in the particular circumstances of this case. Even in a consumer credit context, for example, under the FCRA, a credit reporting agency or furnisher of information would not be required to modify or delete information simply because the consumer disagrees or believes it is incorrect, *see Baldin v. Wells Fargo Bank, N.A.*, No. 3:12-CV-00648-AC, 2013 WL 6388499, at *8 (D. Or. Dec. 6, 2013),[4] and Phoneternet has not

---

("in considering a motion to dismiss under Rule 12(b)(6), district courts are free to consider any facts set forth in the complaint that undermine the plaintiff's claim.") (internal quotation marks omitted)); *Reginella Constr. Co., Ltd. v. Travelers Cas. & Sur. Co. of Am.*, 971 F. Supp. 2d 470, 475 (W.D. Pa. 2013) (holding that "whe[n] the plaintiff's inferences would contradict the well-pleaded factual allegations, the Court cannot accept them").

[4] The district court in *Baldwin* reasoned as follows regarding the duties of a furnisher of information to make requested changes to information under the FCRA:

presented a basis that warrants imposing such a duty upon LexisNexis in the commercial context under Texas common law. In the absence of such a duty, Phoneternet's negligence claim against LexisNexis, as set forth in paragraphs 24(d) through (n) of its Complaint, fails as a matter of law and will be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### 2. Negligent Breach of a Special Duty

Defendants contend as follows regarding Plaintiff's allegation that a negligent breach of a special duty occurred:

> Whe[n] parties have a special relationship, certain common law duties may be imposed. *See, e.g., Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996) (attorney's duty to client); *Krishnan v. Sepulveda*, 916 S.W.2d 478, 482 (Tex. 1995) (doctor's duty to provide competent care to patient); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494, n.1 (Tex. 1991) (between parties to certain contracts). But that special duty is limited to the parties in the relationship. *See Barcelo*, 923 S.W.2d at 577. Plaintiff fails to plead what special duty under Texas law existed between it and [LexisNexis].

> Plaintiff also asserts that the relationship involved "good faith." Complaint ¶ 53. "Since its inception, the duty of good faith and fair dealing has only been applied to protect parties who have a special relationship based on trust or unequal bargaining power." *Natividad v. Alexsis, Inc*., 875 S.W.2d 695, 697 (Tex. 1994). Plaintiff does not plead any facts that, if true, would warrant the formation of a special relationship. Making phone calls to a corporation's customer service department simply cannot form a "special relationship" involving "good faith" as a

---

Section 1681s–2(b) provides a private right of action against furnishers for failure to comply with its requirements. It does not, however, create liability for furnishers simply because the consumer continues to disagree with the conclusion reached by a furnisher following compliance with § 1681s–2(b). The provisions of FCRA do not require Wells Fargo to ignore its policies and procedures related to the processing and application of loan payments by modifying or deleting information provided to the CRAs simply because the consumer disagrees. Subparagraph (E) of § 1681s–2(b)(1) requires Wells Fargo to modify, block or delete any inaccurate "information." Nothing in § 1681s–2(b), however, requires Wells Fargo to correct information simply because the consumer believes it is erroneous. It is important to note Baldin's dispute over the validity of her underlying debts is not equivalent to a factual inaccuracy that must be must modified, deleted, or blocked in accordance with subsection (E). Indeed, these are the questions at issue in this litigation and vigorously contested by Wells Fargo.

*Id.* at *8.

matter of law. As such, Plaintiff's claims relating to the breach of a special duty fails and should be dismissed.

Defs.' Jt. Mot. 11-12.

Plaintiff responds that, while "making calls will not form a relationship, agreeing during the calls that [LexisNexis] will correct the highly important data over which they have assume[d] dominion will give rise to the relationship." Pl.'s Resp. 21. Plaintiff contends that the following allegations in its Complaint give rise to such a special relationship:

> [I]n promising that the erroneous data was corrected or would be corrected, [LexisNexis] assumed a special duty and expressly or impliedly promised Plaintiff that they would correct the erroneous data promptly. As a result of their dealings, a special relationship arose between the [LexisNexis] and Plaintiff. Such relationship involved fidelity, good faith, professionalism, and special care as specialists charged with the knowledge of significant effect that the provision of such information might have on a commercial transaction. Plaintiff was either (1) the beneficiary of a special promise, (2) a party to a special relationship, or (3) a client.

*Id.* (quoting Pl.'s Compl. ¶ 53 and citing ¶¶ 8, 9, 16-19). Plaintiff, therefore, argues that Defendants' motion should be denied because its Complaint, as written, "satisfies Defendants['] demand for 'facts that, if true, would warrant the formation of a special relationship.'" Pl.'s Resp. 21.

Plaintiff cites no legal authority to support its contention that LexisNexis owed it or breached a duty arising from a special relationship based on allegations set forth in the Complaint regarding Phoneternet's calls to LexisNexis's customer service department and representations made during those calls. There are also no facts alleged that would support a finding that Phoneternet was a party to a special relationship with LexisNexis or that it was a client of LexisNexis. Thus, for the reasons previously explained, the court determines that Texas does not and would not recognize the existence of a legal duty owed by LexisNexis to Phoneternet under the facts of this case as needed to support a claim of negligence.

### 3. Business Disparagement

LexisNexis contends that Plaintiff's business disparagement claim, based on publication of allegedly incorrect information to Toyota on June 12, 2017, fails because Phoneternet did not advise it of the alleged error until July 21, 2017, after publication of the allegedly inaccurate information, which negates the element of actual malice required to support a claim of business disparagement under Texas common law. To the extent Plaintiff asserts a claim for business disparagement based on continued or subsequent publication of the information to unidentified third parties or potential business partners of Phoneternet, Defendants contend that it too fails because Plaintiff does not allege that it suffered any special damages.

Plaintiff acknowledges that any claim based on publication to unidentified third parties is flawed but contends that this does not undermine its claim for business disparagement with respect to Toyota because it has alleged that "[LexisNexis] had been 'apprised' that its data was 'woefully out-of-date and inaccurate and thus entertained serious doubts as to the truth of the data included in the reports.'" Pl.'s Resp. 22 (citing Pl.'s Compl. 41). Plaintiff contends that this allegation establishes that [LexisNexis] had reasons, other than its notifying LexisNexis, to believe that the information was false "**<u>before</u>** publication." Pl.'s Resp. 22. Plaintiff asserts that the allegation in paragraph 41 of its Complaint is not conclusory because it alleges that the "had been apprised" language in paragraph 41 "refers back to specific errors set forth in the July 21 letter detailed in paragraph 15." *Id.* at 22.

The elements of a claim for business disparagement are publication by the defendant of the disparaging words, falsity, malice, lack of privilege and special damages. *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 390-91 (5th Cir. 1996) (citing *Hurlbut v. Gulf Atlantic Life Ins.*, 749 S.W.2d 762, 767 (Tex. 1987)). Business disparagement and defamation are similar in that both provide for

tort liability for the publication to third parties of false statements that affect the plaintiff. *In re Lipsky*, 460 S.W.3d 579, 591 (Tex. 2015); *Hurlbut*, 749 S.W.2d at 766. Defamation protects the personal reputation of the injured party while business disparagement protects the economic interests of the injured party from pecuniary loss. *Id.* As previously noted, actual malice in this context refers to the making of a statement by the defendant "with knowledge that it is false, or with reckless disregard of whether it is true." *Forbes, Inc.*, 124 S.W.3d at 170. "Reckless disregard is a subjective standard, focusing on the defendant's state of mind. Mere negligence is not enough." *Id.* (citations omitted). Reckless disregard is shown when "the defendant in fact entertained serious doubts as to the truth of [its] publication or had a high degree of awareness of . . . [the] probable falsity of the published information." *Id.* (citation and quotation marks omitted). The term special damages refers to the direct, pecuniary loss attributable to the alledgely false communications of the defendant. *Johnson*, 95 F.3d at 591.

Although Plaintiff contends and alleges that LexisNexis was apprised and aware of the alleged inaccuracies in its data before publishing it in the report provided to Toyota as a result of Phoneternet's July 21, 2017 letter to LexisNexis, this, according to Plaintiff's pleadings, occurred *after* LexisNexis provided the credit report to Toyota on June 12, 2017. Moreover, there are no other factual allegations in the Complaint from which the court can reasonably infer that LexisNexis was aware of any alleged inaccuracies before July 21, 2017. Plaintiff also alleges that, after being informed that Phoneternet could lose its prospective contract, LexisNexis "continued to provide incorrect and false statements with the intent to prevent execution of the prospective contract," but this allegation appears to refer to the alleged publication to unidentified third parties rather than Toyota, because Plaintiff also alleges that, "[b]ut for the delay by LexisNexis in rectifying its data, Plaintiff would have been able to direct Toyota to purchase an updated and correct report" that

cured the "procurement" or credit-related issue. Pl.'s Compl. 6-7. In other words, there is no indication that Toyota ever sought a subsequent report.

Thus, the court agrees that there are insufficient factual allegations in Plaintiff's Complaint to support a finding of actual malice, as there is no indication from Plaintiff's pleadings that LexisNexis was aware of any alleged inaccuracies prior to July 21, 2017, which occurred *after* information was provided to Toyota on June 12, 2017. Further, as Defendants contend, and Plaintiff acknowledges, there are no allegations in the Complaint to support a finding that Phoneternet suffered any direct, pecuniary loss resulting from subsequent publications to unidentified third parties or future business partners. Accordingly, Plaintiff's business disparagement claim will be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### 4. Negligent Misrepresentation

Regarding its negligent misrepresentation claim, Phoneternet alleges:

> [LexisNexis's] representations to Plaintiff that the erroneous data had been modified as requested and/or would be corrected promptly . . . Such representations were false. [LexisNexis was] providing the false information for the guidance of Plaintiff. [LexisNexis] failed to exercise reasonable care or competence in obtaining or communicating the information about the modification of the data ("the fix") and/or its prompt correction. Plaintiff justifiably relied on [LexisNexis's] representations in that Plaintiff did not take actions that it would have had it known the representations were false. Plaintiff would have taken measures to put Toyota on notice of the specific information that was false in the report to Toyota and shown why it was false. Plaintiff would have prepared an independent report or made some other reparative presentation to Toyota. Plaintiff would have sought restraining orders or other legal remedies. Instead, Plaintiff waited on LexisNexis to take action because of the false representations.

Pl.'s Compl. ¶ 46.

To the extent Plaintiff's negligent misrepresentation claim is based on a representation that the data "would be corrected promptly," Defendants contend that dismissal is proper because

representations regarding future conduct are not actionable. To the extent the claim is based on a representation that data had previously been "modified as requested," Defendants contend that the claim fails for lack of justifiable reliance, as negligence misrepresentation requires that a plaintiff justifiably rely on the representation.

Plaintiff, in response, concedes that any claim based on a promise to do something in the future fails but contends that its claim based on the negligent misrepresentation that LexisNexis had modified "the data as requested," as set forth in paragraph 18 of the Complaint, is sufficient as pleaded because Plaintiff alleges in that same paragraph that it:

> spoke with the LexisNexis customer service team, **managers and supervisors on <u>numerous occasions</u> who each assured Plaintiff** that Plaintiff's information would be updated in the database. Plaintiff was informed more than once that the issue of Phoneternet's data **had been passed upon by senior decision makers at LexisNexis and would be fixed promptly**.

Pl.'s Resp. 8 (quoting Pl.'s Compl. ¶ 18) (emphasis added by Pl's Resp.). Plaintiff contends that this allegation establishes "a promise that any reasonable person would rely upon." *Id.*

The elements for a claim for negligent misrepresentation under Texas law are:

> (1) the representation is made by a defendant in the course of [its] business, or in a transaction in which [it] has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*General Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005) (quoting *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 357 (5th Cir. 1996)); and *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)). "[A] claim for negligent misrepresentation under Texas law contemplates that the 'false information' provided by the defendant is a misstatement of existing fact." *Clardy Mfg. Co.*, 88 F.3d at 357. Thus, a "promise

of future conduct will not support a negligent misrepresentation claim." *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 760 (Tex. App.—Fort Worth 2012, pet. denied). Like fraud, negligent misrepresentation requires actual and justifiable reliance by the plaintiff. *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). In measuring justifiability, courts must inquire whether, "given the . . . plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged [misrepresentation,] it is extremely unlikely that there is actual reliance on the plaintiff's part." *Id.* (citing *Haralson v. E.F. Hutton Grp., Inc.*, 919 F.2d 1014, 1026 (5th Cir. 1990) (applying Texas law)). Further, "a person may not justifiably rely on a representation if there are 'red flags' indicating such reliance is unwarranted." *Grant Thornton LLP*, 314 S.W.3d at 923 (quoting *Lewis v. Bank of Am. NA*, 343 F.3d 540, 546 (5th Cir. 2003), and summarizing the holding in that case as "plaintiff's decision to enter into transaction without undertaking additional investigation into tax consequences was not justifiable, given his access to professional accountants, the amount of money involved, and the ambiguous nature of the pertinent representation.").

For the reasons already explained, the court concludes that Phoneternet's reliance on any statement by LexisNexis that it had corrected certain alleged inaccuracies was not justified in light of the amount of money at stake and Plaintiff's allegations that, while LexisNexis made a couple of modifications requested by Phoneternet, it "continued to stand by [its] data" in other respects. Pl.'s Compl. ¶¶ 28, 40. The court also agrees with the parties that any representation by LexisNexis to do something in the future will not support a claim for negligent representation under Texas law. Thus, Plaintiff has failed to state a claim for negligent representation upon which relief can be granted, and this claim will be dismissed with prejudice.

### 5. Promissory Estoppel

Defendants contend that Plaintiff's promissory estoppel claim, which is based on the allegation that LexisNexis promised to "correct the erroneous data promptly," Pl.'s Compl. ¶ 49, is not sufficiently definite to be enforced based on a theory of promissory estoppel. Defendants contend that Plaintiff's promissory estoppel claim should be dismissed for lack of specificity because:

> a promise to "correct the erroneous data promptly" is too vague for enforcement. There is no allegation that [LexisNexis] and Plaintiff agreed as to which data was "erroneous" and would be corrected. Similarly, the deadline to fulfill the promise "promptly" is not enforceable. There is no allegation, nor could there be, as to what amount of time constitutes "promptly."

Defs.' Jt. Mot. 10. Defendants further assert that Plaintiff has not pleaded facts that would establish its reliance on the promise was reasonable.

Plaintiff responds that its reliance was reasonable, but it does not address Defendants' contention that Plaintiff's allegations are too vague to support relief under a promissory estoppel theory.

In *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138 (Tex. App.—Houston [14th Dist.] 1999, pet. denied), cited by Defendants, the court explained, with respect to promissory estoppel:

> Generally, promissory estoppel is a viable alternative to breach of contract. The elements of promissory estoppel are a promise, foreseeability by the promisor that the promisee would rely on the promise, and substantial reliance by the promisee to his detriment. *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). The Texas Supreme Court has explained that the theory of promissory estoppel "does not create a contract where none existed before, but only prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them. . . . The function of the doctrine of promissory estoppel is, under our view, defensive in that it estops a promisor from denying the enforceability of the promise." "*Moore*" *Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937 (Tex. 1972). Promissory estoppel does not operate to create liability where it does not otherwise exist. *See Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988).

*Id.* at 141. The court went on to explain that Texas courts have emphasized that "estoppel requires a *reasonable or justified reliance* on the conduct or statement of the person [or entity] sought to be estopped by the person [or entity] seeking the benefits of the doctrine." *Id.* at 142 (quoting *Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 108 (Tex. App.—Dallas 1987, writ ref'd n.r.e.)) (emphasis in original). For the reasons already explained, the court concludes that Phoneternet's reliance on any statement by LexisNexis that it had or would correct certain alleged inaccuracies was not justified in light of Plaintiff's allegations that, while LexisNexis made a couple of modifications requested by Phoneternet, it "continued to stand by [its] data" in other respects. Pl.'s Compl. ¶¶ 28, 40. Thus, as asserted by Defendants, "[t]here is no allegation that [LexisNexis] and Plaintiff agreed as to which data was "erroneous" and would be corrected." Defs.' Jt. Mot. 10. This claim will, therefore, be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### 6. Tortious Interference with Prospective Business Relations

A claim for tortious interference with prospective business relations requires a plaintiff to allege that:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (citations omitted). "To establish liability for interference with a prospective contractual or business relation the plaintiff must [allege] that it was harmed by the defendant's conduct that was either independently tortious or unlawful." *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex.

2001). Independently tortious conduct is "conduct that is already recognized to be wrongful under the common law or by statute." *Id.*

Defendants contend that the court should dismiss Plaintiff's claim for tortious interference with prospective business relations because there is no independently tortious conduct by LexisNexis. Plaintiff disagrees and contends that its allegations with respect to all of its claims satisfy this requirement. As the court has determined otherwise, this claim fails as a matter of law and will be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### 7. Injunctive Relief

Defendants contend that Plaintiff is not entitled to injunctive relief because it cannot prevail on any of the claims asserted. Defs.' Jt. Mot. 12 (citing *DSC Comm. Corp. v. DGI Techs, Inc.*, 81 F.3d 597, 600 (5th Cir. 1996), for the proposition that a request for injunctive relief warrants dismissal if the plaintiff cannot establish a substantial likelihood of success on the merits of its claim(s)).

Plaintiff disagrees and contends that:

[it] has alleged meritorious causes of action against the [LexisNexis], and as indicated in [its] [C]omplaint, [it] Plaintiff has shown a probable right of recovery and likelihood of success on the merits, [and it] has suffered and will continue to suffer imminent, irreparable harm without Court intervention.

As a direct and proximate result of the [LexisNexis's] wrongful actions as alleged in this complaint, [it] has suffered and will continue to suffer imminent injury that will be irreparable and for which no remedy at law exists without the protections of a temporary restraining order and injunctive relief. [It] has and will continue to be damaged and injured by the [LexisNexis's] conduct by the loss of [] customers, loss of entering into the [p]rofessional services agreement with Toyota, loss of reputation, and loss of business opportunities among others. [LexisNexis's] actions have caused [its] damages in an amount within the jurisdictional limits of the court, by depriving [it of] the ability to enter into a contract with Toyota before the deadline for 2019 vendors to Lexus and potentially all Toyota contracts into the future, by depriving [it] of profits from customers who would have become [its] customers but for [LexisNexis's] actions, as well as depriving [it] the opportunity to expand its

business and reputation within the small yet competitive industry in which [it] competes.

Pl.'s Resp. 18.

In its Complaint, Plaintiff requests injunctive relief in the form of a preliminary and permanent injunction. There are four prerequisites for the extraordinary relief of a preliminary injunction. A court may grant such relief only when the movant establishes that:

(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (en banc ). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet any of the four requirements, the court cannot grant the preliminary injunction.

As the court has already determined for the reasons herein explained that Phoneternet has failed to state any claims upon which relief can be granted, it necessarily follows that Phoneternet cannot satisfy the requirement that it establish a substantial likelihood of succeed on the merits of any of its claims. Thus, Phoneternet has not met its burden of satisfying all of the requirements as necessary for a preliminary injunction, and it is not entitled to a preliminary injunction. For the same reason, it is not entitled to a permanent injunction. The court, therefore, **denies** and **dismisses with prejudice** its request for injunctive relief.

## IV.    Amendment of Pleadings

Plaintiff has not requested to further amend its pleadings in the event the court determined that it failed to state a claim. The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Considering these factors, the court determines that Plaintiff should not be given another opportunity to amend its peladings, as it has previously amended them three times, and any attempt at further amendment would be futile and result in unnecessary delay. The court, therefore, determines that Plaintiff has pleaded its "best case." As the Fifth Circuit aptly stated, "[a]t some point, a court must decide that [Plaintiffs have] had fair opportunity to make [their] case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). That time has arrived. Plaintiff has had four "bites at the apple," and it is not entitled to a fifth "bite." Moreover, allowing any further amendment unnecessarily delays the resolution of this action. Accordingly, the court will not allow any further amendment of pleadings.

## V.    Conclusion

For the reasons explained, the court concludes that Plaintiff has failed to state claims upon which relief can be granted under Rule 12(b)(6).  For the same reason, Plaintiff's request for injunctive relief fails.  Accordingly, the court **grants** Defendants' Joint Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 27); **grants** RELX Inc.'s Motion to Dismiss Third Amended Complaint (Doc. 26); and **dismisses with prejudice** all claims and requests for relief asserted by Plaintiff against Defendants in this action.  In accordance with Rule 58 of the Federal Rules of Civil Procedure, a judgment will issue by separate document.

**It is so ordered** this 30th day of September, 2019.

Sam A. Lindsay
United States District Judge